UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IKEIE SMITH,

      Petitioner,

v.

JEFF HOWARD,

      Respondent.

Case No. 19-12172
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING SMITH'S MOTION TO FILE
AMENDED PETITION [33], DENYING PETITION FOR WRIT OF
HABEAS CORPUS [34], AND DENYING MOTION FOR IMMEDIATE
CONSIDERATION [35] AS MOOT**

---

Ikeie Smith is currently incarcerated at the Baraga Maximum Correctional Facility. Four days into his jury trial in 2014, Smith pled guilty to ten counts of first-degree criminal sexual conduct, five counts of second-degree criminal sexual conduct, two counts of torture, one count of assault with intent to do great bodily harm, nine counts of first-degree home invasion, one count of armed robbery, and two counts of unarmed robbery. He was sentenced to 30 concurrent prison terms, the longest of which are 55-to-80-year terms for his first-degree criminal sexual misconduct and armed robbery convictions.

Smith came to this Court on a petition for writ of habeas corpus under 28 U.S.C. § 2254 claiming, among other things, violations of due process and ineffective assistance of defense and appellate counsel. None of Smith's habeas claims warrant relief. Thus, the petition will be denied.

**I.**

From 2011 to 2016, a string of nighttime home invasions occurred in the Metro Detroit area. During these home invasions, female residents were sexually assaulted by an unknown male intruder. The case broke in 2016 when a Livonia woman spotted a man in her yard on her home security video system. The video eventually led police officers to suspect Smith was the perpetrator of these assaults. During a lengthy police interview, Smith admitted to breaking into approximately 50 homes in the area. He was subsequently charged in connection with nine specific incidents. (ECF No. 13-16, PageID.482–483, 486–489; *see also* ECF No. 13-14, PageID.402–403.)

After four days of trial, during which evidence from four of the consolidated cases was presented to the jury, Smith decided to plead guilty without any plea agreement. (ECF No. 13-14, PageID.393.) At his subsequent plea hearing, Smith testified about the nine specific incidents underlying the charges against him. (*See* ECF No. 13-11.)

Smith testified that on August 23, 2011, he entered an apartment on Tobin Drive in Inkster. (*Id.* at PageID.377.) Police determined that he entered the apartment by cutting out the screen of a baby's bedroom window. (ECF No. 13-14, PageID.401.) From there he went into the bedroom of the child's mother. (*Id.* at PageID.399.) The woman woke up to find Smith standing by her bed. (*Id.*) Smith testified that she started screaming, and he began punching her in the head and face. (ECF No. 13-11, PageID.377–378.)  The victim suffered cuts, scratches, and bruises to her mouth, face, and chest. (ECF No. 13-14, PageID.398.) She suffered serious psychological trauma. (*Id.* at PageID.399.)

The second incident occurred two years later. Smith testified that on August 10, 2013, he broke into a house on West Outer Drive in Dearborn with the intent to steal property. (ECF No. 13-11, PageID.374.) The victim woke up to the sound of her kitchen window wind chimes. (ECF No. 13-14, PageID.405.) She went to investigate and saw a man climbing through her window. (*Id.*) He left when she began screaming. (ECF No. 13-11, PageID.374–375.)

Smith further testified that about four months later, on December 9, 2013, he broke into a house on Cornell Street in Dearborn Heights. (*Id.* at PageID.375.) The victim awoke to a man in her room. (ECF No. 13-14, PageID.408.) Smith admitted that he touched her breasts. (ECF No. 13-11, PageID.375.) The victim begged Smith not to rape her, telling him that she had previously been raped. (ECF No. 13-14, PageID.407–408.) Smith spent about an hour in the victim's room while she pleaded with him not to rape her. (*Id.* at PageID.408.) The victim was later diagnosed with PTSD and suffered from panic attacks. (*Id.* at PageID.407.) Smith agreed that he caused her "extreme mental pain and suffering," even though he did not rape her. (ECF No. 13-11, PageID.376.)

The fourth incident occurred about nine months later on September 9, 2014. Smith testified that he broke into a house on Bedford Street in Dearborn Heights and sexually assaulted a woman. (*Id.*) The victim described her intruder as wearing a skeleton mask. (ECF No. 13-14, PageID.411–412.) He came into her bathroom as she was about to get into the shower. (*Id.* at PageID.412.) He took her into her bedroom (*id.*) where he sexually assaulted her by touching her breasts and legs (ECF No. 13-

11, PageID.376–377). She begged for him to let her go and offered him money. (ECF No. 13-14, PageID.413.) The victim's female roommate heard the commotion, attacked Smith with a wooden shelf, and chased him out of the home. (*Id.* at PageID.412.)

Smith testified that later that same year, on November 24, 2014, he broke into a house on Appleton Street in Redford Township. (*Id.* at PageID.368–370.) The victim stated that she was asleep in bed when she found a man standing over her. (ECF No. 13-14, PageID.416.) Her young child was asleep in another room. (*Id.*) Smith raped the woman while she cried. (*Id.*) He also threatened her so she would not call the police and stole her cell phone to prevent her from calling for help. (*Id.* at PageID.416.) At his plea hearing, Smith testified about the details of the rape. (ECF No. 13-11, PageID.368–369.)

The sixth charged incident occurred in 2015. Smith testified that on August 13, 2015, he broke into a home on Woodside Court in Dearborn with the intent to steal property. (ECF No. 13-11, PageID.373.) A male resident heard the intrusion and found Smith standing in the kitchen pointing a laser pointer at him. (ECF No. 13-14, PageID.424.) His wife, child, and newborn baby were asleep in a nearby room. (*Id.*) The man scared off Smith. (ECF No. 13-11, PageID.374–375.)

Smith testified that less than a month later, on September 6, 2015, he entered a home on Anne Street in Allen Park. (*Id.* at PageID.379.) Inside, he again encountered a female resident in her bed. (*Id.*) He put a hard object against the victim's head, which she believed to be a gun, and he covered her face with a pillow.

4

(ECF No. 13-14, PageID.420–421.) He threatened to kill her. (*Id.* at PageID.421.) He then raped her. (ECF No. 13-11, PageID.379–380.) The victim suffered from PTSD and panic attacks. (ECF No. 13-14, PageID.420.)

The eighth incident occurred a couple months later. Smith testified that on November 10, 2015, he broke into a house on Arcola in Garden City. (ECF No. 13-11, PageID.372.) The female victim was asleep in her living room. (ECF No. 13-14, PageID.429.) She woke up to find a man holding a knife to her face and body. (*Id.* at PageID.427–428.) Her husband and children were asleep in their rooms. (*Id.*) The man shut off the television and lights. (*Id.* at PageID.428.) As he raped her, he threatened her so she would not call the police, saying he would wait outside to make sure she did not call for help. (*Id.*) Smith admitted to penetrating her multiple times and touching her breasts. (ECF No. 13-11, PageID.372.) He also admitted that he had a knife or sharp object. (*Id.* at PageID.373.)

Finally, Smith testified that on May 13, 2016, he broke into a house on Minock Street in Redford. (*Id.* at PageID.370.) The victim awoke to a man standing over her bed with a knife. (ECF No. 13-14, PageID.432–433.) She reached out and felt its serrated edge. (*Id.* at PageID.431–432.) Her children were asleep in other rooms. (*Id.* at PageID.433.) The man turned off the television and the lights and made the victim keep a pillow over her face. (*Id.*) Smith testified that he sexually assaulted the woman by penetrating her and touching her breasts. (ECF No. 13-11, PageID.370–371.) He also admitted to having a knife or sharp object. (*Id.* at PageID.371.) The victim stated that after the assault, her assailant forced her down into the basement, still with the

pillow over her face. (ECF No. 13-14, PageID.433.) The victim feared she would be killed, and that her teenage daughter—who was asleep in the basement—would also be victimized. (*Id.*)

## II.

Following extensive pretrial delays, a jury trial commenced on four of these nine incidents in Wayne County Circuit Court. (*See* ECF Nos. 13-1–13-9.) On May 1, 2017, after several days of testimony, Smith announced his decision to abandon his defense and plead guilty to all the charges. (ECF No.13-11, PageID.362.)

Defense counsel stated that "Mr. Smith has indicated to me that he would rather just plea as charged and let [the court] be the decider of his sentence." (*Id.*) Smith reconfirmed to his counsel that he wished to plead guilty after the prosecutor objected to a no contest plea. (*Id.* at PageID.363.) The prosecutor indicated that she would need time to prepare for the plea hearing, and the case was adjourned. (*Id.*)

About an hour later, the court called all nine case numbers—not just the four that were being tried—and proceeded with the plea hearing:

> THE COURT: Mr. Harris [defense counsel], you have indicated that your client wants to offer a plea of guilty to all of the counts and all of the cases; is that correct?
>
> MR. HARRIS: That is correct, yes.
>
> THE COURT: Is he ready for questioning?
>
> MR. HARRIS: Yes, your Honor.
>
> MS. BENNETTS [prosecutor]: Judge, just so the record is clear, I know there is no preliminary evaluation of sentence from the Court at this time and there is no plea deal from the People. This will just be an as charged plea, sentencing will be determined at a later date, obviously.

6

THE COURT: That's correct.

(*Id.* at PageID.364.)

Smith was then placed under oath. (*Id.* at PageID.365.) Smith testified that he was 32 years old and had an associate's degree. (*Id.*) The Court informed Smith that he had been charged "on an information with numerous counts which we will reiterate," "but the most severe[] charge you face . . . carries up to a life imprisonment." (*Id.* at PageID.366.) Smith indicated his understanding and his satisfaction with his counsel and agreed with his counsel's statement that he wished to offer a plea of guilty to the offenses. (*Id.*)

Smith denied that anyone had promised him anything as to sentencing or dismissal of any charges "or anything like that." (*Id.*) Smith confirmed that it was his decision and his alone to plead guilty, and he indicated that he was doing so freely, understandingly, and voluntarily. (*Id.*) Smith acknowledged his understanding of all the trial rights he would be waiving by entering his guilty plea. (*Id.* at PageID.367–368.) The court proceeded to have the prosecutor elicit a factual basis from Smith for all the criminal charges in each of the nine cases, as summarized above. (*Id.* at PageID.368–380.)

The court then turned to the sentencing consequences Smith faced for pleading guilty:

> THE COURT: All right. And as I indicated to you, Mr. Smith, the maximum punishment you can receive, the most severe punishment you can receive is life imprisonment on the criminal sexual conduct in the first degree, 20 years on the home invasion in the first degree, 15 years on the criminal sexual conduct, 15 years on the robbery armed, on each

of these cases and on—I think there was a criminal sexual conduct 15 year—was there some other—

MR. HARRIS: There was a torture.

MS. BENNETTS: There is CSC second degrees that are 15-year felonies, yes, Judge.

THE COURT: What about the assault with intent to do great bodily harm is ten years.

MS. BENNETTS: That is ten years and there [are] two unarmed robbery charges.

THE COURT: What is 15 years.

MS. BENNETTS: Correct.

THE COURT: And the torture is life, too, is that correct?

MS. BENNETTS: Yes.

MR. HARRIS: Yes.

THE COURT: Those are all of the sentences that he is exposing himself to; is that correct?

MS. BENNETTS: Yes.

THE COURT: All right.

MS. BENNETTS: The armed robbery as well, which is also life. I don't know if you said that, Judge.

(*Id.* at PageID.380–82.)

The court did not inform Smith that the Sex Offender Registry Act (SORA) would apply to his conviction or that he would be subject to lifetime electronic monitoring (LEM). Nor did the court explicitly state that it was accepting Smith's guilty plea or explicitly find that Smith had entered his plea voluntarily.

Nevertheless, both the prosecutor and defense counsel indicated that they were satisfied that the court had "followed the court rule," and the court set the matter for sentencing. (*Id.* at PageID.382.)

At least with respect to one of the nine cases, Smith signed a written plea form on the date of the plea hearing that listed the specific charges he was pleading guilty to and the maximum sentences the charges carried—including two charges for first-degree criminal sexual conduct which carried maximum sentences of "life." (ECF No. 13-12, PageID.384.) The form also indicated that Smith would be subject to "lifetime SORA registration and lifetime electronic monitoring—on all counts of CSC 1st Degree." (*Id.*)

One week later, Smith filed a pro se motion to withdraw his plea, asserting that his plea was involuntary because the trial court did not inform him of the maximum penalties for each offense and because he was not informed of any maximum-minimum sentencing requirements. (ECF No. 13-13.)

A sentencing hearing was held on May 25, 2017. (ECF No. 13-16.) The court began by noting that it had failed to verbally advise Smith of SORA and LEM at the time of the plea. (*Id.* at PageID.453.) But Smith admitted that he knew when he pled guilty that he would be subject to SORA and LEM, and he admitted that he pled voluntarily in view of those consequences. (*Id.* at PageID.454–455.) The court then denied Smith's pro se motion to withdraw his plea, finding that it had informed Smith of the maximum sentences he faced. (*Id.* at PageID.455.)

9

The court proceeded to sentencing, ultimately imposing a string of 30 concurrent sentences, the ten longest of which were 55-to-80-years for Smith's first-degree criminal sexual misconduct and armed robbery convictions. (*Id.* at PageID.494–503; ECF No. 14-13, PageID.1597–1605.)

Smith, through appellate counsel, filed a second motion to withdraw the plea in the trial court. (ECF No. 13-17.) The motion asserted that Smith received ineffective assistance of counsel, claiming that Smith was coerced into pleading guilty when his counsel told him that the judge would impose a sentence within the sentencing guidelines range in exchange for a guilty plea. (*Id.* at PageID.505–506.) Smith also claimed that his attorney informed him that he would be able to appeal his case to the Michigan Court of Appeals. (*Id.* at PageID.506.) The trial court denied the motion, finding that the plea colloquy belied Smith's allegations. (ECF No. 13-19; ECF No. 13-20, PageID.567–569.)

Smith filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claim:

> I. Whether the circuit court abused its discretion in denying plea withdrawal or a resentencing, where the court failed to inform Mr. Smith at the time of the plea that he would be subjected to lifetime electronic monitoring if paroled, and was not given the opportunity to withdraw his plea when he was advised of this after the fact at sentencing; where defense counsel erroneously advised Mr. Smith that his guilty plea would result in a sentence within the sentencing guidelines range; where defense counsel failed to inform Mr. Smith that an unconditional guilty plea precludes him from appealing his case; and where defense counsel joined the prosecutor in requesting that the sentence exceed the top end of the sentencing guidelines range.

(ECF No. 14-11, PageID.968.)

The Michigan Court of Appeals denied the application "for lack of merit in the grounds presented." *People v. Smith*, No. 342913 (Mich. Ct. App. May 29, 2018), *available on this docket at* (ECF No. 14-11). Smith failed to timely file an appeal in the Michigan Supreme Court. (*See* ECF No. 14-10.)

On July 24, 2019, Smith filed the present action. (ECF No. 1.) On October 12, 2019, before Respondent answered the petition, Smith filed a motion for relief from judgment in the trial court with respect to only one of his nine cases, raising the following claims:

I. Appellant was denied constitutionally effective assistance of counsel based on appellate counsel's failure to file a timely appeal on Mr. Smith's behalf after promising to do so.

II. Trial counsel was ineffective for failure to: A) investigate appellant's work schedule; B) failure to request an expert witness.

III. The trial court denied Mr. Smith his constitutional rights to self-representation when it ignored his request and denied his request to represent himself and foreclosed further analysis of the issue.

IV. The circuit court abused its discretion in denying plea withdrawal or resentencing where the court failed to inform Mr. Smith at the time of the plea that he would be subjected to lifetime electronic monitoring if paroled, and was not given the opportunity to withdraw his plea when he was advised of this after the fact at sentencing; where defense counsel failed to inform Mr. Smith that an unconditional guilty plea precludes him from appealing his case; where defense counsel erroneously advised Mr. Smith that his guilty plea would result in a sentence within the sentencing guidelines range; and where defense counsel joined the prosecutor in requesting that the sentence exceed the top end of the sentencing guidelines range.

V. Appellant was denied the effective assistance of counsel guaranteed by the federal Constitution where his appellate counsel neglected strong and critical issues which must be seen as significant and obvious.

VI. Due process requires plea withdrawal where trial counsel failed to file motion for withdrawal before sentencing. Where this court neglected to inform Defendant at the plea hearing that his sentence would include lifetime electronic monitoring upon release from prison.

VII. Trial court abused its discretion by erroneously denying Defendant's motion to withdraw guilty plea before sentencing where the court failed to inform Mr. Smith of the direct consequences of the guilty plea before accepting the guilty plea.

(ECF No. 14-4, PageID.603–604.)

The parties stipulated to hold the federal habeas petition in abeyance until Smith concluded state-court proceedings. (ECF No. 7.) On March 12, 2020, the trial court issued an opinion denying the motion for relief from judgment. (ECF No. 14-5.)

Smith then filed a second motion for relief from judgment in the trial court. (ECF No. 14-6.) This motion listed all nine case numbers, raised the same claims as his first motion, and added a new claim asserting that police lacked probable cause to obtain his DNA sample. (*Id.* at PageID.620–622.) The trial court denied the motion. (ECF No. 14-8.) The court noted that it would only consider the motion as to the eight cases not addressed by the first motion. (*Id.* at PageID.701.) The court went on to find that review of Smith's new claims was barred under Michigan Court Rule 6.508(D)(3) and that under Rule 6.508(D)(2) Smith was prohibited from raising arguments he presented on direct appeal. (*Id.* at PageID.706–708.)

Smith did not appeal the trial court's decision denying his second motion. Rather, Smith filed an application for leave to appeal the trial court's denial of his first motion for relief from judgment, raising the same claims he raised in the trial court. *See People v. Smith*, No. 355049, 2022 WL 3568056, at *1 & n.2 (Mich. Ct. App.

12

Aug. 18, 2022) (per curiam), *available on this docket at* (ECF No. 14-13, PageID.1316 & n.2). The Court of Appeals granted the application and ordered counsel to be appointed. *People v. Smith*, No. 355049, 2020 Mich. App. LEXIS 8823 (Mich. Ct. App. Dec. 30, 2020).

While the appeal was pending, Smith retained substitute counsel who filed a motion for peremptory reversal. This motion is the pleading where Smith first raised the bulk of the claims he raises in the present habeas action:

> I. This Court must vacate the judgment of sentence where Defendant-Appellant was never asked and never expressly pleaded guilty on-the-record after being informed of the charges, maximum and mandatory minimum penalties, and the rights he would be waiving.
>
> II. The judgments of sentence must be vacated where the trial court judge neglected to inform and ensure that Defendant-Appellant understood: (A) the names of all the charged offenses; (B) the maximum possible prison sentences for all charged offenses; (C) any mandatory minimum sentences required by law for all the charged offenses; (D) the requirement for mandatory lifetime electronic monitoring; (E) that he would be completely barred from appealing certain issues and would have to seek leave to appeal; (F) that he would be required to register as a sex offender under SORA; and (G) where the trial court judge affirmatively misadvised Defendant-Appellant regarding the maximum possible penalty for armed robbery.

(ECF No. 14-13, PageID.1789, 1797, 1810.)

The Court of Appeals affirmed the denial of the motion for relief from judgment. *Smith*, 2022 WL 3568056, at *6, *available on this docket at* (ECF No. 14-5, PageID.1315–1322). Notably, the Court of Appeals stated that only the one lower-court case number was properly before it, as Smith had only appealed the denial of his first motion for relief from judgment. *Id.* at *2 n.2. The court also declined to consider the new claims raised by substitute appellate counsel because they had not

13

been presented in Smith's application for leave to appeal. *Id.* at *1. The court likewise declined to address the claims that Smith had raised in his direct appeal. *Id.* at *2. Finally, the court went on to reject the post-conviction claims that had been presented to the trial court in the first motion for relief from judgment. *Id.* at *1–6.

Smith appealed this decision to the Michigan Supreme Court, but his application for leave to appeal was denied by standard form order. *People v. Smith*, 985 N.W.2d 521 (Mich. 2023) (mem), *available on this docket at* (ECF No. 14-12). Smith never appealed the denial of his second motion for relief from judgment.

On May 10, 2023, Smith filed a motion to reopen his federal habeas case, and he filed an amended habeas petition that raised seven claims with numerous subparts. (ECF No. 8.) The Court granted the motion, reopened the case, and ordered Respondent to answer. (ECF Nos. 9, 10.) Respondent filed a responsive pleading and the state court record. (ECF Nos. 12, 13, 14.)

After Smith filed additional motions seeking injunctive relief and additional time to file a reply brief, he ultimately filed a motion to file a second amended petition. (ECF Nos. 33, 34.) Smith explained that his original amended petition contained "disorder, confusion, and rambling." (ECF No. 33, PageID.2533.) Smith asserted that the second amended petition was not intended to raise any new claims, but to "delete several claims that are moot or meritless." (*Id.* at PageID.2534.)[1]

---

[1] The Court GRANTS the motion to file the second amended petition. Respondent will not be prejudiced by an amended petition that simply narrows and clarifies the claims Smith wishes to raise in this action. Respondent's answer to the first amended petition already adequately addresses the narrower set of claims raised

The second amended petition raises the following claims:

I. The trial court entered convictions without jurisdiction where Smith never expressly entered pleas of guilty on the record, resulting in a denial of due process of law contrary to U.S. Const. Amend. V and XIV.

    A. Smith never entered pleas of guilt on the record;

    B. The trial court failed to accept any plea of guilt on the record.

II. The convictions must be vacated where the trial court neglected to inform and ensure that Smith understood:

    A. The names of all the charged offenses, and the maximum possible prison sentence for all the charged offenses;

    B. The requirement for mandatory lifetime electronic monitoring.

III. Smith was denied effective assistance of defense counsel as guaranteed by U.S. Const. Amend. V, VI, and XIV.

IV. Smith was denied effective assistance of appellate counsel as guaranteed by U.S. Const. Amend. V, VI, and XIV.

V. The trial court denied Smith of his right to self-representation in a denial of due process of law contrary to U.S. Const. Amend. VI and XIV.

(ECF No. 34.)

## III.

28 U.S.C. § 2254(d) limits federal habeas review of state convictions on claims adjudicated on the merits by state courts. To obtain relief, a habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A state

---

in the second amended petition**Error! Main Document Only.**. Fed. R. Civ. P. 15(a)(2).

court's decision is "contrary to" clearly established Supreme Court law if the court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ [of habeas corpus] simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

With this deferential standard of review in mind, the Court turns to Smith's specific claims.

## IV.

### A. Procedural Default

Respondent first asserts that review of these claims is barred because all but one is procedurally defaulted. (ECF No. 12, PageID.231.)

A habeas petitioner's claim can be procedurally defaulted in one of two ways. First, when the state court considering the claim rejects it based explicitly on an

16

independent and adequate state procedural rule. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Wainwright v. Sykes*, 433 U.S. 72, 85–87 (1977). Second, when the petitioner failed to fully exhaust the claim and no longer has the ability to do so. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996). Both types of procedural default are present here.

Start with Smith's fifth claim, asserting a denial of the right to self-representation. Smith presented this claim to the trial court in his first motion for relief from judgment. This claim is defaulted because the trial court relied on an independent and adequate state procedural rule for denying relief. True, the court erroneously denied relief on the mistaken belief that Smith had previously presented the issue on direct appeal. (ECF No. 14-5, PageID.614–615; *see also* ECF No. 14-11, PageID.713–714.) But Michigan's Court of Appeals affirmed that denial based on an independent and adequate state rule: Michigan Court Rule 6.508(D)(3)(b)(jj). This Rule provides that a prerequisite for state post-conviction review is that a movant must demonstrate "actual prejudice." The court concluded that Smith had not demonstrated actual prejudice because he failed to show where in the record he invoked the right to self-representation. (ECF No. 14-13, PageID.1319–1320.)

The Michigan Court of Appeals' reliance on this rule as a ground for decision bars subsequent federal habeas review of the claim. *See Gurnsey v. Prelesnik*, No. 11-15038; 2014 U.S. Dist. LEXIS 66771, at *27 (E.D. Mich. May 15, 2014) (citing Rule 6.508(D)(3)(b)(ii); *Ivory v. Jackson*, 509 F. 3d 284, 292–93 (6th Cir. 2007); *Howard v. Bouchard*, 405 F. 3d 459, 477 (6th Cir. 2005)); *see also Guilmette v. Howes*,

624 F.3d 286, 291 (6th Cir. 2010) (en banc) (describing  Mich. Ct. R. 6.508(D)(3) as a "procedural-default rule").

Smith's other claims are procedurally barred because he did not fully exhaust them in the state courts, and he no longer has an available post-conviction remedy for satisfying the exhaustion requirement.  A state prisoner must exhaust available remedies in state court before raising a claim in a federal petition for a writ of habeas corpus. *See* 28 U.S.C. §§ 2254(b), 2254(c). To satisfy the exhaustion requirement, all claims must be "fairly presented" to the state courts, meaning that the petitioner must have put before the state courts both the factual and legal bases for the claims. *See Baldwin v. Reese*, 541 U.S. 27, 29–32 (2004). Presenting the factual and legal bases required Smith to undergo "one full round" of the state's appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In practice, "one full round" means presenting each issue to both the Michigan Court of Appeals and the Michigan Supreme Court. *See Morse v. Trippett*, 37 F. App'x 96, 103 (6th Cir. 2002).

Smith's first claim asserts that his guilty plea is invalid because the trial court never formally asked him how he pled and thus never explicitly accepted a guilty plea. His second claim is that his plea is invalid because the trial court never listed all the offenses that he was pleading guilty to during the plea hearing and because he was not warned about LEM. And finally, Smith claims that his trial counsel was ineffective for failing to object to the plea on the basis of the foregoing issues and for failing to object to the joinder of the five additional cases that were not being tried when he pled guilty.

18

Save for the LEM claim, all of these arguments were raised for the first time in Smith's motion for peremptory reversal with the Michigan Court of Appeals during the appeal from the denial of Smith's first motion for relief from judgment.[2] To be sure, Smith raised other claims challenging the validity of his guilty plea on direct appeal and in his motion for relief from judgment, but those arguments were based on distinct factual predicates and legal theories. The exhaustion requirement requires that claims be based on the same facts and theories. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995). The Michigan Court of Appeals refused to consider the new claims because they were not presented in Smith's application for leave to appeal and were therefore not properly before the court. (ECF No. 14-13, PageID.1316); *Smith*, No. 355049, 2022 WL 3568056, at *1 (citing Mich. Ct. R. 7.205(E)(4); *People v White*, 977 N.W.2d 138, 142 n.3 (Mich. Ct. App. 2021)).)

Smith did not fairly present these claims to the Michigan Court of Appeals because presenting new claims on appeal—that were not presented to the trial court nor in the application for leave to appeal—is procedurally improper and rendered consideration of their merits unlikely. *Castille*, 489 U.S. at 351. In fact, the court did not consider them. These claims therefore do not satisfy the exhaustion requirement.

And because Smith no longer has a procedure available to now exhaust them, the claims are not only unexhausted but are procedurally defaulted as well. The Michigan Court Rules dictate that "one and only one motion for relief from judgment may be filed with regard to a conviction." Mich. Ct. R. 6.502(G)(1). The only exceptions

---

[2] As indicated above, the LEM claim was raised on direct appeal.

to the rule require "(a) a retroactive change in law that occurred after the first motion for relief from judgment was filed, (b) a claim of new evidence that was not discovered before the first such motion was filed, or (c) a final court order vacating one or more of the defendant's convictions." Mich. Ct. R. 6.502(G)(2). None of these exceptions apply to any of Smith's defaulted claims, which are all based on the existing record and existing legal theories. Thus, the new claims raised by Smith in his motion for peremptory reversal are barred from habeas review.

This leaves only a portion of Smith's second claim. Smith asserts that his plea is invalid because the trial court failed to inform him that he would be subject to LEM. He first raised this claim on direct appeal to the Michigan Court of Appeals. (ECF No. 14-11, PageID.713.) After it was denied, however, Smith did not timely appeal to the Michigan Supreme Court. And an untimely application for leave to appeal in the Michigan Supreme Court does not exhaust a claim. *See Bell v. Smith*, 114 F. Supp. 2d 633, 637 (E.D. Mich. 2000). So the claim is unexhausted.

Similar to the previous claims, Smith no longer has an available procedure to exhaust his LEM claim because Rule 6.502 prevents him from filing another post-conviction review proceeding in state court and because Rule 6.508(D)(2) prevents him from re-raising a claim that was already presented on direct review.

All of Smith's claims, therefore, are procedurally barred from federal habeas review. And he cannot overcome this procedural default. *See, e.g., Carruthers v. Mays*, 889 F.3d 273, 288 (6th Cir. 2018) (stating that, when a claim is unexhausted, but no state remedy remains available, the claim is procedurally defaulted, and a federal

20

habeas court may not review the claim without a showing of cause and actual prejudice).

To overcome the procedural defaults, Smith must demonstrate "cause" for noncompliance with state procedural rules and "actual prejudice" resulting from the alleged constitutional violation, or he may demonstrate his actual innocence. *See Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007). "Cause" means that some external impediment frustrated the petitioner's ability to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such impediments include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).

The only cause argument offered by Smith to excuse any of his defaults appears in his fourth habeas claim: ineffective assistance of appellate counsel. Smith asserts that the appellate attorneys who represented him in the appeal from the denial of his motion for relief from judgment were ineffective for failing to raise his habeas claims in that proceeding. This argument fails for two reasons.

First, there is no Sixth Amendment right to counsel in a state post-conviction proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). While ineffective assistance of counsel can establish cause to excuse a procedural default, it may only do so when it occurs in a proceeding where the defendant has a right to counsel. *Wainwright v. Torna*, 455

21

U.S. 586, 587 (1982) (per curiam) (holding that where there is no constitutional right to counsel there can be no deprivation of effective assistance); *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 426 (6th Cir. 2003). Thus, whether or not any of the three appellate attorneys who represented Smith during that proceeding erred in failing to present his habeas claims, such failure did not constitute ineffective assistance of counsel under the Sixth Amendment, and therefore it cannot excuse any procedural default or form the basis for granting habeas relief. *Coleman*, 501 U.S. at 752–53.

Second, this argument misses the nature of the defaults. The claims that first appeared in the motion for peremptory reversal were not defaulted because they were not adequately raised in the Court of Appeals by appellate counsel—they were defaulted because they were not preserved below nor raised in Smith's own application for leave to appeal. The Court of Appeals specifically found that it would not consider certain claims because they had not been presented in Smith's pro se application for leave to appeal:

> We note at the outset that this Court granted delayed leave "limited to the issues raised in the application." *People v. Smith*, unpublished order of the Court of Appeals, entered December 30, 2020 (Docket No. 355049). Our review is thus properly limited to those issues. MCR 7.205(E)(4); *see also People v. White*, 337 Mich. App. 558, 567 n. 3; 977 N.W.2d 138 (2021) (stating this Court will not consider arguments other than "those raised in the application"). Accordingly, we decline to consider defendant's claims that (1) the trial court failed to advise defendant about the requirement to register under the Sex Offenders Registration Act, MCL 28.721 et seq.; (2) the court failed formally to ask defendant, "How do you plead?"; (3) the court failed to advise defendant of, and determine that he understood, the names of the offenses to which he was pleading; (4) the court failed to explain, and determine that defendant understood, the maximum possible sentences for the offenses; and (5) the trial court

misstated the maximum possible sentence for armed robbery and failed
to explain its mandatory minimum sentence.

(ECF No. 14-13, PageID.1316.) Even if Smith had a right to counsel at this stage,
ineffective assistance of appellate counsel does not speak to or excuse Smith's own
failure to raise these claims in his motion for relief from judgment or in his application
for leave to appeal. *See Gadomski v. Renico*, 258 F. App'x 781, 783–84 (6th Cir. 2007);
*Wright v. Howes*, No. 07-10965, 2013 WL 27914, at *7–8 (E.D. Mich. Jan. 2, 2013).

With respect to the LEM claim, and Smith's failure to file a timely application
in the Michigan Supreme Court, ineffective assistance of appellate counsel does not
establish cause because Smith also had no constitutional right to counsel at that stage
of the proceedings. *See Hale v. Burt*, 645 F. App'x 409, 417 (6th Cir. 2016) (citing *Ross
v. Moffitt*, 417 U.S. 600, 610 (1974)).

The only claim that ineffective assistance of appellate counsel could excuse is
the self-representation claim. That claim was raised in the trial court in Smith's first
motion for relief from judgment and then in both state appellate courts. But Smith
fails to demonstrate that his counsel was ineffective for failing to raise it on direct
appeal.

To demonstrate ineffective assistance of appellate counsel, the petitioner must
show that his counsel performed deficiently and that but for the deficient
performance there is a reasonable probability of a different result on appeal. *Smith
v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland v. Washington*, 466 U.S. 668
(1984)). Appellate counsel, however, need not "raise every nonfrivolous claim on
direct appeal." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Rather, a

23

petitioner can overcome the presumption of effective assistance of counsel only by showing that the "[omitted] issues are clearly stronger than those presented." *Id*. As will be discussed below, and for the reasons given by the Michigan Court of Appeals, Smith cannot make this showing because he never made an unequivocal request to represent himself.

Accordingly, all of Smith's claims are procedurally defaulted and no cause exists to excuse the defaults.

## B. Trial Court's Failure to Elicit or Accept Guilty Plea

Even apart from these procedural defects, Smith's claims do not merit habeas relief. Start with his first claim that he never actually entered a guilty plea (ECF No. 34, PageID.2560–2562) and that the trial court failed to accept a guilty plea on the record(*id.* at PageID.2562–2563).

Due process requires that a plea of guilty be made "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "[T]he defendant is required to understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights." *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady*, 397 U.S. at 755. Additionally, the defendant must be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty.

24

*King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.

The state has the burden to show that the guilty plea was voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238 (1969). This can be satisfied by a transcript of a proper plea colloquy in the state court proceedings. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact that the plea was proper. *Id*. at 326–27.

Smith's claim is a technical one. While the transcript makes clear that the trial court went through the proper inquiry, Smith says he was never specifically asked "how do you plead?" But the record makes clear that he was pleading guilty and knew he was pleading guilty.

Midway through trial Smith told his defense attorney that he wanted to plead guilty to all the charges against him. (ECF No. 13-11, PageID.362.) After counsel announced this to the court, Smith confirmed to counsel that it was his desire to plead guilty even if a no contest plea was not an option. (*Id*. at PageID.363.) When proceedings resumed after a short recess, the court called all nine cases—not just the four that were currently being tried. (*Id*. at PageID.365.) The court once again confirmed with defense counsel that Smith would plead guilty to "all of the counts and all of the cases." (*Id*.)

The court then placed Smith under oath and addressed him directly. (*Id.*) Smith indicated his understanding that he faced numerous charges, that the most severe carried life sentences, and that he was satisfied with his counsel. (*Id.* at PageID.366.) The court stated: "Your counsel indicates to me that you want to offer a plea of guilty to these offenses, do you agree?" (*Id.*) Smith answered, "Yes, your Honor." (*Id.*) Smith then denied any off-the-record promises. (*Id.*) He personally confirmed that it was his decision and his alone to plead guilty. (*Id.*) Smith indicated that he was doing so freely, understandingly, and voluntarily. (*Id.*) Smith was then informed of all the trial rights he would be waiving by entering his guilty plea. (*Id.* at PageID.367–368.) Smith proceeded to testify to committing the crimes involved in all nine cases, with the court calling each case number separately during the plea hearing. (*Id.* at PageID.368–380.) Finally, it appears Smith signed a written plea form that detailed all the individual charges, penalties, and SORA and LEM consequences for at least one[3] of the numbered cases. (ECF No. 13-12, PageID.384.)

The Court concludes that, contrary to his assertion, Smith personally entered a guilty plea and did so voluntarily, knowingly, and understandingly. His statement to the court that he agreed with his counsel's representation that he wished to plead guilty to all the charges in all the cases clearly and unambiguously communicated his desire to plead guilty. He told the court that it was his own choice to enter a plea, and

---

[3] Only one such form appears in the Rule 5 materials, so the Court cannot tell whether plea agreements were signed for each of the nine cases. Nevertheless, it is clear from the plea hearing that Smith was pleading guilty to all of the cases, as each case number was called individually and the prosecutor elicited the factual basis for each incident from Smith.

that he was not promised anything in exchange for his plea. Smith acknowledged the rights he was waiving and the maximum penalties he faced. Finally, his testimony at the hearing admitted to the facts necessary to show that he was, in fact, guilty of every charge brought against him in every case.

Next, Smith argues that the trial court never explicitly accepted the plea. It is true that at the close of the plea hearing the court did not explicitly state that it had accepted the plea or that it had found that Smith voluntarily entered his plea. The Sixth Circuit has noted, however, that there is no particular action that a court must perform to accept a defendant's guilty plea. *United States v. Andrews*, 857 F.3d 734, 740 (6th Cir. 2017). A proper guilty plea colloquy creates a presumption that the court accepted the guilty plea. *Id.* Other courts have likewise found that there is no requirement that a court "use some kind of talismanic 'magic words' to effect an acceptance once the colloquy has been completed." *See United States v. Battle*, 499 F.3d 315, 321–22 (4th Cir. 2007). Rather, a guilty plea can be accepted either by "explicit language or an implicit acceptance." *United States v. Gutierrez-Gress*, 458 F. App'x 404, 405 (5th Cir. 2012) (holding that although "[t]he record supports that the district court failed to make an explicit adjudication of guilt . . . the record further shows that the district court implicitly accepted [the defendant's] guilty plea"). When analyzing whether a court accepted a guilty plea, "what matters ultimately is the language of the trial court and the context in which it is used." *United States v. Tyerman*, 641 F.3d 936, 943 (8th Cir. 2011).

As already detailed, the record here shows that the trial court accepted Smith's guilty plea. And the parties acknowledged their agreement. At the close of the hearing the court asked both the prosecutor and defense counsel whether it had complied with "the court rule," and both attorneys stated that they were satisfied that it had. (ECF No. 13-11, PageID.383.) The court rule in question, Michigan Court Rule 6.302(A), outlines the requirements for the entry and acceptance of a guilty plea. The rule provides that the court may not accept a guilty plea unless it is satisfied that the plea was understanding, voluntary, and accurate. (*Id.*) After eliciting agreement from the parties that it had complied with the court rule, the court set a sentencing date— another clear indication that the court accepted the plea. (*Id.*)

This clarity continued at the sentencing. When the court addressed its failure to verbally inform Smith of the LEM requirement at the plea hearing, it confirmed with Smith that he had "entered into [his] plea freely and understandingly and voluntarily." (ECF No. 13-16, PageID.455.) When the court later denied defense counsel's motion to withdraw the plea (yet another sign that Smith had indeed entered a guilty plea), it explicitly found that Smith had voluntarily entered his guilty plea. (ECF No. 13-20, PageID.568 ("In light of defendant's answers to those questions during the plea proceeding and the record above, it is this Court's determination that the defendant was not coerced into pleading guilty, and his plea was voluntarily made.").) These exchanges show that the court viewed the guilty plea as having been entered and accepted at the time of the plea hearing.

Accordingly, the state court record shows that Smith voluntarily entered his guilty plea and that the trial court accepted it. His first claim does not warrant habeas relief.

### C. Improper Joinder of All Nine Cases at Plea Hearing and Failure to Disclose Lifetime Electronic Monitoring

Smith's second claim asserts that because he was only being tried on four of the nine cases brought against him before he entered the plea, it was improper to add the other five cases into the plea proceeding. He asserts he was inadequately informed about which charges he was pleading guilty to because the court did not separately list them or discuss the penalties for each offense. (ECF No. 34, PageID.2565.) Smith also complains that it was improper for the trial court to allow the prosecutor to elicit the factual bases for the offenses and that by doing so the prosecutor improperly slipped the other five cases into the proceedings. (*Id.* at PageID.2566–2567.) Finally, Smith asserts that he was not timely informed that his guilty plea would result in LEM. (*Id.* at PageID.2568–2570.)

These arguments lack merit because they too are not supported by the record. With respect to being informed that he was pleading guilty in all nine cases, as indicated above, defense counsel initially indicated and Smith confirmed that it was Smith's desire to plead guilty "as charged." (ECF No. 13-11, PageID.362.) After a short recess, the court called all nine cases. (*Id.* at PageID.363.) The court began by indicating, "Mr. Harris, you have indicated that your client wants to offer a plea of guilty *to all of the counts and all of the cases* . . . ." (*Id.* at PageID.364.) Smith indicated his understanding. (*Id.* at PageID.366.)

Then, during the plea hearing, the trial court called each case number before the prosecutor elicited testimony from Smith clarifying which date and home the case referred to and establishing a factual basis for each charged offense. (*Id.* at PageID.368–379.)[4] And in addition to the information placed on the record, Smith signed a written plea form. (ECF No. 13-12, PageID.384.) Although the form listed only one case number, it indicated that Smith would be subject to "lifetime SORA registration [and] lifetime electronic monitoring—*on all counts* of CSC 1st Degree." (*Id.* (emphasis added).) These cumulative circumstances make clear that Smith understood that he was pleading guilty in each of the nine cases.

With respect to the failure to inform Smith of LEM at the plea hearing, it is true that the Michigan Supreme Court has held that LEM is a direct consequence of a guilty plea to first-degree criminal sexual conduct, and that a failure to inform a defendant about LEM renders a plea unknowing and involuntary. *People v. Cole*, 817 N.W.2d 497, 498 (Mich. 2012).

But as this Court has previously ruled in another case where the habeas petitioner was not informed at his plea proceeding that he would be subject to lifetime electronic monitoring, "the state trial court's failure to comply with the procedural rule set forth in *Cole* is not a basis for habeas relief" because errors of state law do not entitle a petitioner to federal habeas relief. *Smith v. Bauman*, No. 10-11052, 2018

---

[4] The Court rejects Smith's allegation that the prosecutor injected the five cases that were not being tried into the plea hearing. To the contrary, it was the trial court that called all nine case numbers and then called each case number individually during Smith's examination by the prosecutor. (*Id.* at PageID.368–379.) And the court did so only after Smith expressed his desire to plead guilty as charged.

30

WL 1399312, at *4 (E.D. Mich. Mar. 19, 2018) (citations omitted), *aff'd*, No. 18-1385, 2019 WL 4865345 (6th Cir. June 25, 2019).

Moreover, the record here shows that Smith was aware of LEM at the time of his plea. First, Smith acknowledged as much at his sentencing. (ECF No. 13-16, PageID.453–455.) Second, as discussed above, Smith signed a written plea form that said that LEM applied. And although that form listed only one case number, when Smith signed the plea agreement as to one case at the same time he pled guilty in all of the other cases, he was aware that he was subject to lifetime electronic monitoring on at least two counts of CSC in the first degree. Regardless of the number of counts or cases to which he pled guilty, he knew he would be subject to electronic monitoring for life.

Smith fails to show an unknowing plea on this basis. His second habeas claim does not merit relief.

### D. Ineffective Assistance of Trial Counsel

Smith's third claim asserts that he was denied the effective assistance of trial counsel when his attorney (1) failed to object to the joinder of the five other cases at the plea hearing, (2) allowed the prosecutor to conduct his examination at the plea hearing, (3) failed to object to the trial court's failure to advise Smith of the names of all the charges and the maximum sentences, and (4) failed to advise Smith that he could automatically withdraw his guilty plea because it had never been accepted by the court. (ECF No. 34, PageID.2571–2572.)

Ineffective assistance of counsel may render a plea of guilty involuntary. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To show that counsel performed ineffectively, a defendant must establish that (1) counsel performed deficiently and (2) there is a reasonable probability that, absent counsel's error, he would not have pleaded guilty and instead would have proceeded to trial. *Strickland*, 466 U.S. at 687; *Hill*, 474 U.S. at 58.

Smith fails to show either defective performance or prejudice. For all the reasons stated, the record makes clear that Smith voluntarily and knowingly pled guilty to all offenses in all nine cases. Smith testified at the hearing that it was his own choice to plead guilty. He was the one who, in the midst of trial, told his counsel that he wanted to plead guilty. Counsel did not perform deficiently by failing to take actions to hinder a plea proceeding that his client asked for. Smith wanted to abandon his trial and plead guilty to every charge in every case, knowing full well the consequences, and his attorney's actions facilitated and accomplished that result. For these same reasons, there is absolutely no basis to find that Smith would have continued with the on-going trial and not pled guilty if his attorney had acted differently.

Smith's third claim is without merit.

### E. Ineffective Assistance of Appellate Counsel

Smith's fourth claim asserts ineffective assistance of appellate counsel during the appeal from the denial of his motion for relief from judgment. (ECF No. 34, PageID.2573.) Smith claims that his counsel's failure to properly present and raise

his second and third habeas claims in that proceeding was deficient performance. (*Id.* at PageID.2574.) The argument fails.

As discussed above, there is no Sixth Amendment right to counsel in a state post-conviction proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). Accordingly, there can be no claim for ineffective assistance of counsel in a state post-conviction proceeding. Smith argues that Michigan Court Rule 7.205(E)(3)—which provides that when leave to appeal is granted "the case proceeds as an appeal of right"—gives him a constitutional right to counsel. But he is mistaken. This state court rule does not transform the proceeding into a first-tier direct appeal where the Constitution guarantees a right to counsel.

Additionally, even if Smith had a right to counsel in that proceeding, his appellate counsel could not have raised his habeas claims. The Court of Appeals specifically found that it would not consider the new claims that had not been presented in Smith's pro se application for leave to appeal. (ECF No. 14-13, PageID.1316 ("We note at the outset that this Court granted delayed leave 'limited to the issues raised in the application.' Our review is thus properly limited to those issues." (citations omitted)).) So counsel's performance was not deficient for failing to raise claims that the court explicitly said it would not consider.

Therefore, Smith's fourth claim is without merit.

### F. Denial of Right to Self-Representation

Finally, Smith says he was denied the right to self-representation when the trial court forced him to proceed with counsel after he attempted to dismiss his attorney at a hearing on January 27, 2017. (ECF No. 34, PageID.2575.) Smith argues that when he filed a pro se motion to discharge his appointed counsel and to appoint standby counsel on January 25, 2017, he invoked the right to represent himself. (*Id.* at PageID.2582.)

The Michigan Court of Appeals rejected this claim when it affirmed the trial court's denial of Smith's first motion for relief from judgment:

> Defendant asserts that he asked to represent himself in a proceeding that took place on January 25, 2017, but the register of actions records nothing for that date. It does, however, list for January 27, 2017, a "Motion to Withdraw Counsel and Appoint Standby Counsel." The transcript of the attendant hearing, however, does not show that defendant actually requested self-representation, unequivocally or otherwise. Rather, he asked only that his attorney be removed. When the trial court advised defendant to work with his attorney, defendant again did not ask to represent himself. When the court advised defendant that he could hire his own attorney, defendant likewise did not ask to represent himself. Absent an unequivocal request, the trial court had no duty to determine whether defendant knowingly, intelligently, and voluntarily wished to represent himself, or whether self-representation would have disrupted, inconvenienced, or burdened the court.

(ECF No. 14-13, PageID.1320.)

Criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). However, the right to self-representation is not absolute. *Martinez*, 528 U.S. at 161. Nor is it automatic. A defendant's request for self-representation must be made

34

clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *see also United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994). Furthermore, a defendant's invocation of his right of self-representation must be timely made. *See e.g.*, *Moore v. Haviland*, 531 F.3d 393, 403 (6th Cir. 2008).

Here, the Michigan Court of Appeals found that Smith did not make a clear and unequivocal request to represent himself. A state court's factual findings, such as these, are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). This rule applies equally to the factual findings made by the Michigan Court of Appeals in reviewing the trial record. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Smith offers nothing to counter this factual finding by the Court of Appeals, let alone clear and convincing evidence. His claim was reasonably denied by the state appellate court.

As all of Smith's claims are procedurally barred from habeas review and without merit, his petition for writ of habeas corpus is denied.

## V.

Accordingly, the Court GRANTS Smith's motion to file a second amended habeas petition (ECF No. 33) and DENIES WITH PREJUDICE the petition for a writ of habeas corpus (ECF No. 34). Additionally, the Court DENIES AS MOOT Smith's motion for immediate consideration (ECF No. 35).

Dated: August 13, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE